**STUART D. RUBIN**
*ATTORNEY AT LAW*
26 Court Street, Suite 2506
Brooklyn, New York  11242
Tel.:718-802-0778
Fax: 718-802-0831
stuartrubin@comcast.net

January 20, 2006

Honorable Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY  11201

                Re:    <u>U.S. v. Michael Adams, et al.</u>
                      Criminal Docket No.: 03-1368 (ARR)

Dear Judge Ross:

      Pursuant to The Court's request, please accept this letter as the joint response of all defendants to the Government's position that every employee at John F. Kennedy International Airport (JFK) who has obtained a SIDA Badge with the Customs Hologram ("SIDA badge") occupies a "position of trust" as contemplated in U.S.S.G. 3B1.3.  The Court is familiar with the factual and procedural history of this matter so they will not be reiterated here other than to summarize the testimony of the December 16, 2005 hearing.

      ***The December 16, 2005 Evidentiary Hearing***

      1.    *The relationship between Port Authority/Customs Enforcement and employers at John F. Kennedy International Airport with respect to the issuance of SIDA badges with the Customs hologram*

      There are approximately 700 companies operating at John F. Kennedy International Airport ("JFK") that are approved to seek SIDA badges for their employees (H:71, 81)[1] Each of the companies has to go through an approval process demonstrating a legitimate need to do business at JFK ("if a terminal operator sends me a piece of paper saying company ABC is valid…for any reason…we'll permit access to that terminal") (H:81).  Certain employees at each company are picked to be "Issuing Officers."  Issuing Officers go to a class to learn the basic

---

[1] Number in parentheses preceded by the letter "H" refer the page number of the transcript of the hearing held on December 16, 2005.

- 1 -

process for the issuance of SIDA badges.  The lesson taught to the issuing officers is: "basically that they are not allowed to issue the card unless the person is on the company's payroll" (H:62).

Port Authority and Customs receive applications for the issuance of SIDA badges from all of the 700 approved airport employers that need access to restricted areas (H:12, 63).  The applications call for the identity of the employee (pedigree information), employment history (if any), and criminal history (if any).  The Port Authority application includes what location within the restricted area of the airport individual employees need to access.  The specific door(s) available to SIDA badge holders is/are determined by the nature of their employer's business (H:85).  Access points for any SIDA badge holder may be limited to a single doorway, which is controlled by swiping the SIDA badge.  The magnetic strip on the back of the SIDA badge contains a code that will only open the door(s) at an approved entrance (H:91).

Neither The Port Authority or Customs sets any rules for how an employee is supervised by his employer (H:74, 72-73).  The scope of employment is entirely within the discretion of the employer.

*2.     Relationship between SIDA badge holders and their employers*

As noted above SIDA badge holders are completely dependant upon their employers to apply for the SIDA badge.

Once a SIDA badge is issued, the badge holder is supervised in all aspects of his/her employment by the employer (H:29, 31, 73).  Customs and the Port Authority set no rules for the scope of employment or how an employee is supervised by his/her employer (H:74). Large airport employers have their own security programs (H:98).

*3.     Relationship between Port Authority Customs, and SIDA badge holders at JFK.*

Prior to getting clearance an employee must be fingerprinted and attend an approximately four hour course.  The contents of the course could not be disclosed at the hearing, "it's sensitive security information" (H:82).

Once a SIDA badge is issued to a company's employee, the relationship of the badge holder with Port Authority and Customs is characterized by monitoring, surveillance, and investigation aimed at discovering criminal and regulatory violations by badge holders.

> a.   Customs inspectors inspect 30% of arriving planes on the tarmac before they are off-loaded.  A significant reason for this on-the-tarmac inspection is that planes may contain drugs or other contraband and the inspectors want to find the contraband before the SIDA badge holders remove it.  These on the tarmac inspections allow customs to more closely monitor SIDA employees (H:47-51).

    b.    Customs inspectors stop and check SIDA badge holders in the secured areas (H:36).

    c.    20% of the Internal Conspiracy Group's work week is spent on surveillance of SIDA badge holders (H:42-43).

    d.    Port Authority Police, the Internal Conspiracy Group, Customs Enforcement, Customs Inspectors, I.C.E., and D.E.A. all monitor, conduct surveillance, and investigate SIDA badge holders.

    e.    "Challenging": SIDA badge holders are required to note when persons in secure areas have a SIDA badge or fail to display a SIDA badge. They are not to confront an individual, but rather are to monitor the person and contact authorities. They are paid $50 for each contact and are sanctioned if, in a test situation, they do not monitor and/or contact authorities to report improper badge display (H:69).

    f.    Third Party Contractor. An outside contractor conducts approximately 500 security audits on SIDA badge holders per month (H:69)

    g.    Port Authority Police monitor SIDA badge holders (H:93). Indeed the Court noted that at one of the trials, it was Port Authority Police Officers observation of an unusual event lead to an important discovery in the instant investigation (H:94).

    h.    There are surveillance cameras on the tarmac and in the cargo terminals. Everything SIDA badge holders do is done in open view (H:30).

    4.    *The number of employees receiving SIDA badges*

JFK Airport operates under the guidance of 49 CFR Part 1542 which mandates that every one of the 429 airports in the United States have an "access control program" for restricted areas (H:57-58, 68). There are 32,000 SIDA badge holders at JFK Airport (H:76). All employees who have access to secured areas at any of the 429 U.S. airports must have a SIDA badge. No testimony was elicited as to the total number of SIDA badge holders in the nation's 429 airports.

### *Argument*

*"As the case law indicates, whether a defendant occupied a position of trust is a fact-intensive inquiry that requires a detailed factual record about the relationship between the defendant and the entrusting individual or entity."* U.S. v. Adams, 03-CR-138 (ARR), opinion and order, December 2, 2005 p. 4.

- 3 -

### *1. Obtaining a SIDA Badge*

In order for USSG 3B1.3 to apply, a defendant's position must involve discretionary authority that has been entrusted to the defendant *by* the victim, *United States v. Thorn* 317 F3d, 107, 120 (2nd cir 2003) (emphasis supplied); *United States v. Hirsh* 239 F3d 221, 227 (2nd cir 2001).  In a case of a violation of public rather than private trust, the entrusting public entity is analogous to a private victim for USSG 3B1.3 purposes, *United States v. Nuzzo* 385 F.3d 109, 115 (2nd cir 2004).

The language and substance of the process for obtaining a SIDA badge is characterized by virtually unfettered discretion given by Port Authority and Customs to the 700 *employers* at JFK to determine which of their *employees* should be issued a badge.  Involvement between Port Authority/Customs and SIDA badge applicants is limited to fingerprinting and a four-hour class.

All 700 employers have an "**issuing officer**."  The "**issuing officer**" goes through a class "where they learn their roles and responsibilities, basically they are not allowed to **issue the card** unless the person is on the company payroll" (H:62).  It is the employer who has exclusive discretion as to whether or not to submit the SIDA application for their employee.  The application contains a declaration by the employer as to what area(s) of the airport the employee needs access.  Information on the application supplied by the proposed SIDA employee is limited to: identity (pedigree); work history (if any--no experience is necessary); criminal history (if any--what type of convictions are disqualifying was never mentioned at the hearing).

The only personal involvement of a SIDA employee with the issuing agencies during the application process is: (1) providing fingerprints; and (2) attending an approximately four hour course and passing a test.

In the Government's January 9, 2006 letter to the Court the Government claims that, (a) the process of obtaining a SIDA badge is "engineered to identify trustworthy individuals";  (b) the four-hour class is "rigorous training";  (c) applicants are "deliberated upon"; and, (d) badges are "not idly doled out."  The record demonstrates that each of these four claims is baseless.

Thirty-two thousand employees (32,000) currently hold SIDA badges at JFK alone.  In the nation's 429 airports it can be inferred that many hundreds of thousands of employees have been issued SIDA badges.  There is no requirement of any prior work history.  There are no prior educational requirements.  Only a prior criminal history (of unspecified degree) or a failure to take the four-hour class and pass the test, may disqualify an applicant. Employers have employees who are actually called "issuing officers".  80% of applicants chosen by "issuing officers" are approved.  It is respectfully submitted that this process does indeed amount to a "doling out".

Mr. McCormick refused to testify as to the nature of the (approximately) four-hour class because the information is sensitive and secret (and only shared with at least the 32,000 passing employees).  Given the low educational requirements of the SIDA applicants, the Government is hard-pressed to argue on this record that the training is rigorous.  If it were rigorous less than 80% would pass (indeed of the 20% who are rejected the record does not disclose how many of

the 20% were rejected due to criminal record; therefore, pass rate may be significantly greater than 80%, indeed on this record 20% may be rejected due to criminal history and 100% may pass the test).

There is nothing in this record to suggest, as the Government argues, that the process is engineered to identify trustworthy individuals: no letters of recommendation are required; no verification with previous employers is conducted. Lack of a criminal record is not synonymous with trustworthiness.

Lastly, there is nothing in this record that supports the Government contention that badges are issued after a deliberative process. The record suggests a rubber stamp rather than deliberation.

In summary, badges are doled out at the behest of "issuing officers" designated by the employer only.

### *2 Issuance of the SIDA badge places the holder under the supervision and control of their employer.*

If a SIDA badge holder has any job related discretion at JFK it has been delegated by his employer, not Customs of The Port Authority. No discretion or authority whatsoever is granted by Customs or Port Authority to a SIDA employee.

Whether a defendant occupies a position of trust "turns on the 'extent to which the position provides the freedom to commit a difficult-to-detect wrong,'" U.S. v. Castagnet, 936 F. 2d 57, 62 (2nd Cir. 1991), (quoting U.S. v. Hill, 915 F 2d 502, 506 (9th Cir. 1990). This often quoted standard for a U.S.S.G. 3B1.1 enhancement has several qualifications and conditions. "We recently explained that this standard requires that the 'defendant's position must involve discretionary authority…[and that] this discretion must have been entrusted to the defendant by the victim'" U.S. v. Thorn, 317 F. 3d 107, 120 (2nd Cir. 2003) (quoting U.S. v. Hirsh, 239 F. 3rd 221, 227 (2nd Cir. 2001)).

While a fiduciary obligation is not necessary to establish a position of trust for 3B1.3 purposes, the discretion granted by the victim to the defendant must be substantial, U.S. v. Thorn, at 122 (remanded – the District Court did not make explicit findings…regarding the degree of discretion accorded Thorn by his clients"). The fact that an employee abuses his position by engaging in criminal acts surreptitiously in an area of his employer's business to which he has access is not enough, unless his position was a "repository of public or private trust," U.S. v. Viola, 35 F. 3d 37, 45 (2nd Cir. 1994).

The Government argument hinges upon the assertion that SIDA clearance allows a SIDA employee to wander about within JFK with unfettered discretion. Therefore, the Government argues, badge holders have the ability to commit hard-to-detect crimes. The Government ignores the case law which requires that it must by Port Authority/Customs that grants SIDA employees the discretion/authority to wander about so to commit hard to detect crimes. SIDA clearance only grants access and ability to do a task or job defined by the employer. Customs/Port

Authority set no rules as to whether an employee is ordered to work one location, two locations, or granted wide discretion to wander. There is no evidence in this record to suggest that granting a SIDA badge is a grant of discretion or authority to wander. The employer alone determines job role and supervision, without input from Port Authority or Customs (H:29, 31, 73-74).

> "Thorn, having discretion, as the owner of A+, over how A+ would fulfill its contractual obligations to its clients, … is not the same as A+'s clients *giving* Thorn discretion with respect to how A+ fulfilled its contract obligations" Thorn at 121 (emphasis original).

> "Professional or managerial discretion in his capacity as a Vice President of his company…for purposes of Section 3B1.3, the discretion must be entrusted to the defendant *by* the victim" U.S. v. Jolly, 102 F. 3d 46, 38 (2nd Cir. 1996) (emphasis supplied).

> "Izzo may have abused his position as an employee by surreptitiously viewing the manifests and disclosing their contents, but his position as a fork lift operator was not a repository of public or private trust within the meaning of Section 3B1.3" U.S. v. Viola, 35 F. 3d 37, 45 (2nd Cir. 1994).

A SIDA employer is required to declare in the application how many points of access a SIDA employee needs so to conduct the employer's business. An employee swipe card may be limited to one access door. Employees are not granted discretion as to where to enter restricted areas or whether they can roam. The issuing agencies grant clearance only to the area indicated by the employer. There is no evidence that, as a matter of course, employees have vehicles or other transportation, or any realistic ability to travel the wide ranges of JFK Airport. Moreover, it is clear that the issuing agencies do not grant discretion for employees to travel to the far reaches of the airport, that decision is up to the employer. The Government has confused ability, with the granting of discretion and trust (see, *Viola*, *id)*.

While the Government suggests that the defense belittles SIDA employees by pointing out that many are engaged in menial labor, they ignore the issue raised. The granting of a SIDA badge by Port Authority/Customs only turns an employee over to the employer for job specifications, supervision, monitoring, etc. SIDA employees most frequently load and unload baggage, garbage, food, etc. In the most common situation a SIDA badge employee is only authorized to remove garbage or deliver food to a limited location within the airport. Moreover, a SIDA employee may have no discretion as to location, time, frequency, quantity, quality, etc. of his delivery or removal job. As Application Note 1 to U.S.S.G. 3B1.3 makes clear, employees whose positions neither need nor receive discretion do not fall within the position of trust guideline.

### 3. *Monitoring/Supervision of SIDA Employees*

Among the significant characteristics of a "position of public or private trust" is relaxed supervision. An employer may, for example, trust his/her secretary to write checks, use credit cards, and reconcile the monthly statements; or may authorize the secretary to write checks and use credit cards according to a procedure and have monthly statements reconciled by a different employee. In the first instance a position of trust has probably been created. In the second instance, a position of trust has not been created. The employer's practices in supervising an employee denote the degree of trust placed in the employee. Little or no supervision suggests that, subject to other requirements, a position of trust may have been established. Greater degrees of supervision suggest that a position of trust has not been established, U.S. v. Laljie, 184 F. 3d 180 (2nd Cir. 1999).

In the Court's December 2, 2005 decision and order, the Court ordered the hearing in large part because the Government provided no details,

> "about whether defendant's activities were monitored by Port Authority or Customs officials, whether those agencies delegated responsibility to monitor the defendants to their employers, or whether their activities were easily observable by anyone else who was in a position to observe the tarmac and the cargo holds." (December 2 Decision and Order, p. 3-4)

    a.    *Defendant's activities were monitored by Port Authority and Customs Officials, their designees, and other law enforcement agencies.*

- Special Agent Wagner testified that 20% of the Internal Conspiracy Group's work week was spent on surveillance of SIDA badge holders.
- Customs inspectors inspect 30% of arriving planes while still on the tarmac to see if they are smuggling contraband. The on-tarmac inspections are calculated to eliminate the possibility that SIDA employees could surreptitiously offload drugs.
- An outside contractor conducts 500 audits per month of SIDA badge holders.
- Surveillance cameras exist throughout JFK and are reviewed by Port Authority Police, Customs, DEA, ICE, etc.
- Customs Inspectors stop and check SIDA badge holders in secure areas.
- Badge holders are required to monitor other badge holders and are given $50 for reporting improper badge display. Employees are reprimanded for not reporting improper badge display.

- Port Authority Police Officers that notice something unusual precipitated the instant investigation.

- Customs and Port Authority have not placed blind trust in SIDA employees. To the contrary, everything the agencies do with respect to SIDA employees demonstrates the inherent mistrust that is highly appropriate under the circumstances.

Customs and Port Authority monitoring hardly evince the type of trusting, unsupervised relationships characterized in United States v. Hirsh, 239 F. 2d at 227-228; U.S. v. Wright, 160 F. 3d 905, 910 (2nd Cir. 1998).

    b. *The Port Authority and Customs delegated responsibility to supervise and monitor SIDA employees to their employers.*

- McCormick and Special Agent Wagner both testified that the issuing agencies have no role in how employers supervise their employees or designate job responsibilities.

- The Government did not call any of the 700 JFK employers. Nonetheless, it can be assumed that none would testify that once their employees obtain SIDA clearance employers have a policy of giving every SIDA employee discretion and authority to have the full run of JFK regardless whether their job demands it. To the contrary, the fact that JFK effectively processes such a large amount of cargo and passengers suggests a structure of supervision and monitoring by employers, (without which there would be chaos).

    c. *All SIDA employee work is done in open view.* (H: 30)

*Conclusion*

In seeking to have the mere granting of SIDA clearance alone denote a "position of trust" for purposes of 3B1.3 enhancement, the Government asks this Court to greatly expand the nature of this guideline beyond that contemplated in all reported cases. In none of the reported cases is there is a "middleman" employer that exerts primary supervision over an employee, who has merely been granted access by a government agency. The "position of trust" designation is particularly inappropriate under the circumstances here, because the relationship between the employee and the issuing agencies is characterized by substantial mistrust. This mistrust (which

- 8 -

is completely appropriate and would amount to neglect if it were not present) is characterized by continuous monitoring by the issuing agencies.

      The Government would have this Court find that 32,000 JFK SIDA badge holders, and untold hundreds of thousands of SIDA badge holders across the country, hold a position of trust based solely upon SIDA clearance. In support of this proposition the Government submits no authority, and instead produced evidence of a relationship between badge holders and issuing agencies that is borne by a rubber stamp to employer needs. The relationship between Port Authority, Customs, and approved SIDA employees is characterized by mistrust, surveillance, investigation, and the delegation of authority, not to the employee, but rather to the employer.

      Based upon the foregoing the Government position that U.S.S.G. 3B1.3 applies to every SIDA badge holder should be rejected.

                          Respectfully submitted,


                          Stuart D. Rubin, Esq.
                          Counsel for the Defendant, Cleveland Green

SDR/idr

cc:    Michael J. Ramos, Esq., Assistant United States Attorney (by fax and 1st class mail)
        All counsel (by electronic filing)