

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

CP:SLD/MJR
F. #2003R01382

*One Pierrepont Plaza*
*Brooklyn, New York  11201*

*Mailing Address:* 147 Pierrepont Street
*Brooklyn, New York  11201*

January 24, 2006

The Honorable Allyne R. Ross
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York  11201

   Re: United States v. Michael Adams, et al.
     <u>Criminal Docket No. 03-1368(ARR)</u>

Dear Judge Ross:

  The government writes in reply to the defendants' letter of January 20, 2006 in which they oppose the two-point enhancement for "abuse of a position of trust" that has been assessed against them by the Probation Department. <u>See</u> United States Sentencing Guideline ("U.S.S.G.") § 3B1.3.  In the first instance, the defendants claim that any trust that may be bestowed by the Port Authority of New York and New Jersey (the "Port Authority") or the United States Department of Homeland Security, Immigration and Customs Enforcement ("Customs") by virtue of a SIDA badge was to the employers, as opposed to the employees.  Second, the mere ability to roam unsupervised through secure areas of John F. Kennedy International Airport ("JFK Airport") does not equate to discretion and trust.  Third, the menial nature of airport jobs lacks any discretion.  Finally, the defendants argue that airport employees are supervised at a level that connotes mistrust, as opposed to trust.  The defendants' arguments are unavailing.

  Indeed, the issue before the Court is whether employees at JFK Airport who have been provided security clearance to access sensitive areas of the airport without supervision occupy positions of public trust.  The defendants claim that because the employer submits the application for this security clearance on behalf of the employee, any trust that may exist runs solely between the Port Authority and Customs and the employer.  However, the defendants avoid the obvious -- the employee is the recipient of the clearance granted by the Port Authority and Customs, not the employer.  As such, it is the employee, not the

2

employer, who must exercise substantial discretion within the sensitive areas of JFK Airport. The employer is merely the means by which the application is submitted. Approval of that application by the Port Authority and Customs results in their trust being bestowed upon an individual, a single employee, to enter the airport freely so that they can do their job and nothing else.[1]

The defendants further contend that they cannot be deemed to hold positions of trust based solely on the fact that they held security clearance.[2] In support of their position, the defendants note that employees are restricted to a certain number of locations through which they may enter the airport. However, this fails to recognize that once employees have entered the airport, even through a limited number of entry points, they are permitted unfettered access to secure areas of the airport, may exit the airport from any one of the 1,200 points of entry, and may do so even when they are not scheduled to work. (T. 59:5-7; 95:9-13).[3] While it is true that the employer alone determines the duties and responsibilities of the employee, it is up to the employee to follow them. Acting unsupervised within a 5,000 acre landscape, the defendants are hard-pressed to describe this position as one characterized by anything other than trust. (T.

---

[1] The defendants further contend in support of their position that the process by which a SIDA badge is issued is based upon the mere application by the employer and not a truly deliberative process to identify trustworthy people. Specifically, the defendants note that there is no request made in the process for letters of recommendation or verification with previous employers. While the process may be improved, that does not undermine its stated purpose: to identify trustworthy individuals. Moreover, the process is in accordance with federal regulations. See, e.g., 49 C.F.R. § 1542.209. Finally, it is simply not the case that the mere "say so" of an employer will enable an individual to receive this access.

[2] The government has not contended to the contrary. As the Court correctly identified in its opinion and order, the determination of this issue is a factual-detailed inquiry. For this reason, the government submitted compelling testimony and documentary evidence in support of its position during the evidentiary hearing held on December 16, 2005.

[3] References to the transcript of the hearing held on December 16, 2005, are made by "Tr. __:__", pages precede line numbers and are separated by a colon.

3

54; 19-21).  Indeed, contrary to the defendants' position, the ability to roam through secured areas of JFK Airport is a hallmark of trust.  Moreover, this trust is not diluted by the menial nature of some of their work.  Whether an airplane engineer or garbage man, all employees who are provided with security clearance are permitted the same ability to roam JFK Airport without restriction, save the employee's conscience to do his or her job and nothing else.

Finally, the defendants claim that the level of monitoring that airport employees are subjected to is indicative of mistrust, rather than trust.  In proffering this argument, the defendants do not dispute the quantity of the monitoring of employees, but rather the quality of that monitoring.  In the defendants' eyes, an employee is routinely scrutinized and subjected to rigorous monitoring by federal agencies, local police departments, video surveillance and random challenges.  The reality, however, is that the monitoring of employees at JFK Airport is anything but rigorous and the defendants' characterization to the contrary is disingenuous at best.  Indeed, in comparison to the number of employees who have unfettered access to the airport, coupled with the hundred-thousand flights, millions of passengers and tons of baggage, cargo and mail passing through the sprawling landscape of JFK Airport, the resources devoted by law enforcement to actively monitor the activities of these employees is minimal. (T. 55:8-56:15).  This is for one reason -- these employees are trusted by the Port Authority and Customs to do their jobs and nothing else.

The defendants' reliance on reported cases that address the issue of abuse of a position of trust is equally unpersuasive as they relate to factual scenarios not before the Court. For example, in United States v. Hirsch, 239 F.3d 221 (2d Cir. 2001), United States v. Wright, 160 F.3d 905 (2d Cir. 1998) and United States v. Jolly, 102 F.3d 46 (2d Cir. 1996), the Second Circuit contemplated the efficacy of the enhancement in cases dealing with fiduciary relationships between the defendant and the victim(s), as opposed to arms-length contractual relationships.  Similarly, in United States v. Laljie, 184 F.3d 180 (2d Cir. 1999) and United States v. Viola, 35 F.3d 37 (2d Cir. 1994), the Second Circuit examined specific jobs (private executive secretary and forklift operator, respectively) to determine whether they possess the characteristics of a position of trust.[4]

---

[4] While the facts of Viola may appear facially similar to the instant matter, any similarity lacks substance.  Indeed, the defendant Izzo's crime was beyond the scope of his job as a

4

In the final analysis, the defendants' recitation of the reported cases demonstrates that neither they nor the Guidelines Application Notes, address the unique situation before the Court -- where employees abused their positions and security clearance at a major international airport to import bulk shipments of drugs into the United States.

      Based upon the foregoing, the government respectfully submits that employees at JFK Airport who are entrusted with

---

forklift operator, who obtained information concerning cargo that was kept inside the manager's office.  The Court found that the defendant's actions "were easily detectable, and there were simple objective means to prevent him from gaining access to the documents [containing the information]." <u>Viola</u>, 35 F.3d at 45. The situation in <u>Viola</u>, as demonstrated by the government during the evidentiary hearing, is remarkably different from the one presently before the Court, where the defendants committed narcotics offenses during the routine execution of their unsupervised jobs making it "a difficult to detect wrong." <u>See United States v. Castagnet</u>, 936 F.2d 57, 61-62 (2d Cir. 1991) quoting <u>United States v. Hill</u>, 915 F.2d 502, 506 (9th Cir. 1990).

5

unfettered access to secure areas by means of their SIDA badge occupy a position of trust.

                                        Respectfully submitted,

                                        ROSLYNN R. MAUSKOPF
                                        United States Attorney

                          By:     /s/
                                        Steven L. D'Alessandro
                                        Assistant U.S. Attorney
                                        (718) 254-6200

                          By:     /s/
                                        Michael J. Ramos
                                        Assistant U.S. Attorney
                                        (718) 254-6532

cc:   All counsel (by telecopier)
     Jaime Turton, U.S. Probation Officer
     Clerk of the Court (ARR) (via ECF)