1

1    UNITED STATES DISTRICT COURT

2    EASTERN DISTRICT OF NEW YORK

3    - - - - - - - - - - - - - X

4    UNITED STATES OF AMERICA,   :
                                         CR-03-1768

5              -against-               United States Courthouse

6                               :      Brooklyn, New York

7    MICHAEL ADAMS,

8              Defendant.

9                               :      April 13, 2005
                                       2:30 o'clock p.m.

10   - - - - - - - - - - - - - X

11   TRANSCRIPT OF SENTENCING
     BEFORE THE HONORABLE ALLYNE R. ROSS

12   UNITED STATES DISTRICT JUDGE

13   ATTORNEYS FOR GOVERNMENT:
     ROSALYNN M. MAUSKOPF

14   United States Attorney
     BY:  MICHAEL RAMOS

15       ADAM ABENSOHN
     Assistant United States Attorneys

16   225 Cadman Plaza East
     Brooklyn, New York 11201

17

18   ATTORNEY FOR DEFENDANT:
     WILLIAM WEBBER, ESQ.

18   2509 Avenue U

19   Brooklyn, New York

20

21

     Court Reporter:
22   Marsha Diamond
     225 Cadman Plaza East

23   Brooklyn, New York
     TEL: (718) 613-2489

24   FAX: (718) 613-2369

25       Proceedings recorded by mechanical stenography,
     transcript produced by CAT.

2

1      THE CLERK:   United States versus Michael Adams.

2      Docket Number CR-03-1768.

3      MR. RAMOS:  Michael Ramos and Adam Abensohn for the

4   government.

5      MR. WEBBER: For the defendant William Webber,2509

6   Avenue U, Brooklyn, New York.  Good afternoon, Your Honor.

7      THE DEFENDANT: Good afternoon.

8      THE COURT:  Mr. Webber, what does your client wish

9   to do?

10      MR. Webber:  Your Honor, we've had several

11   discussions between client and myself and then he did a

12   proffer to the government, nothing came of anything, and my

13   client at this time stands before the court willing and ready

14   to plead guilty to the indictment as charged.

15      THE COURT:  Mr. Adams, as we go through the guilty

16   plea there are many questions that I have to ask you and many

17   things that I have to explain to you, and it is very important

18   that you understand everything that I ask and everything that

19   I explain. If there's anything at all that you don't fully

20   understand please just stop me and I'll express myself

21   differently until you do understand.

22      THE DEFENDANT: Yes, Your Honor.

23      THE COURT:  Would you please swear Mr. Adams.

24      M I C H A E L   A D A M S,

25      having been first duly sworn, was examined

1    and testified as follows:

2         (Time noted:  2:44 p.m.)

3         THE CLERK: Please state your name for the record.

4         THE DEFENDANT: Michael Adams.

5         THE COURT:  Mr. Adams, do you understand having been

6    sworn now that you are under oath your answers to my questions

7    will be subject to another prosecution for perjury or false

8    statement if you didn't answer them truthfully?

9         THE DEFENDANT: Yes, Your Honor.

10        THE COURT:  How old are you?

11        THE DEFENDANT: Thirty-three.

12        THE COURT:  How many years of formal education have

13   you had?

14        THE DEFENDANT: High school and a year and a half of

15   college.

16        THE COURT:  Are you now or have you recently been

17   under the care of a physician or a psychiatrist?

18        THE DEFENDANT: No, Your Honor.

19        THE COURT:  In the last 24 hours have you taken any

20   narcotic drugs or medicine, or pills of any kind or drunk any

21   alcoholic beverage?

22        THE DEFENDANT: No, Your Honor.

23        THE COURT:  Have you ever been hospitalized or

24   treated for a narcotic addiction?

25        THE DEFENDANT: No, Your Honor.

4

1          THE COURT:  Is your mind clear now?

2          THE DEFENDANT: Yes, Your Honor.

3          THE COURT:  Do you understand what's going on in

4    this proceeding?

5          THE DEFENDANT: Yes, I understand.

6          THE COURT:  Mr. Webber, have you discussed this

7    matter thoroughly with your client.

8          MR. Webber : Yes , I have.

9          THE COURT:  Does he understand the rights he will be

10   waiving by pleading guilty?

11         MR. Webber : Yes.

12         THE COURT:  Is he capable of understanding the

13   nature of the proceeding?

14         MR. Webber : Yes.

15         THE COURT:  Do you have any doubt as to his

16   competence to plead at this time?

17         MR. Webber : No, Your Honor.

18         THE COURT:  Have you advised him of the maximum and

19   minimum sentence and fine that may be imposed and discussed

20   with him the effect of the sentencing guidelines?

21         MR. Webber : Yes, both orally and in writing he has

22   been advised.

23         THE COURT:  Okay. Mr. Adams, have you had plenty of

24   time to discuss your case with Mr. Webber?

25         THE DEFENDANT: Yes, Your Honor.

1          THE COURT:  Are you satisfied to have him represent
2    you in this proceeding?

3          THE DEFENDANT: Yes, Your Honor.

4          THE COURT:  Have you received a copy of the
5    indictment, that's the document that sets for the charges
6    against you in this case?

7          THE DEFENDANT: Yes, Your Honor.

8          THE COURT:  Did you read it?

9          THE DEFENDANT: Yes, Your Honor.

10         THE COURT:  Did you discuss it with Mr. Webber?

11         THE DEFENDANT: Yes, Your Honor.

12         THE COURT:  Do you understand it?

13         THE DEFENDANT: Yes, Your Honor.

14         THE COURT: Is there anything at all in that document
15   that you didn't understand?

16         THE DEFENDANT: No, no, Your Honor.

17         THE COURT:  There are two charges in the indictment,
18   plus certain forfeiture allegations, I'm going to go through
19   that with you right now, and if you have any question at all
20   as to what any of these charges or allegations mean, I want
21   you just to stop me and you can ask me or ask Mr. Webber.  All
22   right?

23         THE DEFENDANT: Okay, Your Honor.

24         THE COURT:  Count One charges a conspiracy to import
25   cocaine and marijuana, and more specifically, it alleges that

1   between August of 2000 and --  August 2002 and November 25th

2   of 2003, in this district and elsewhere, you and a series of

3   other individuals named in the indictment, together with other

4   people, knowingly and intentionally agreed to import one or

5   more controlled substances into the United States,

6   specifically involving five kilos or more of a substance

7   containing cocaine and 50 kilos or more of a substance

8   containing marijuana.

9          Do you understand that?

10          THE DEFENDANT: Yes.

11          THE COURT:  Count Two charges a conspiracy to

12   possess with intent to distribute marijuana, and specifically,

13   -- I am sorry -- cocaine and marijuana, and charges that

14   between, approximately, the same dates, August of 2002 and

15   November 25th of 2003, in this district and elsewhere, again,

16   you, together with a great number other of other individuals

17   named in the indictment and other people, knowingly and

18   intentionally agreed to distribute and to possess with intent

19   to distribute controlled substances, specifically five kilos

20   or more of a substance containing cocaine and 50 kilos of a

21   substance containing marijuana.

22          (Defendant and counsel conferred)

23          THE DEFENDANT: May I speak, Your Honor?

24          THE COURT:  Yes.

25          THE DEFENDANT: With the distribution part of it,

1  umm, umm, I was never the one to sell.

2          THE COURT:  No, I understand.  In this sense

3  distribute simply means to transfer something from one person

4  to another, so if your plan was to have a package that

5  contained something and give it to somebody, that constitutes

6  distribution.

7          THE DEFENDANT: Okay, Your Honor, yes.

8          THE COURT: Are there specific forfeiture

9  allegations?

10          MR. RAMOS: Not to this defendant.  There are no

11  assets or specific forfeiture allegations as to him, but for

12  the record, there was a handgun seized from the defendant at

13  the time of his arrests.  Customs will, I think, will attempt

14  to take that administratively.

15          MR. Webber: Yes, that is the only subject of any

16  forfeiture.

17          THE COURT:  But that is not something that I need to

18  address.

19          MR. RAMOS: No, I just wanted the record to reflect

20  that.

21          (Counsel and defendant conferred)

22          THE COURT:  Do you understand that you have the

23  right to continue to plead not guilty to those charges?

24          THE DEFENDANT: Yes.

25          THE COURT: If you did, under the Constitution and

1   under the laws of the United States you will be entitled to a

2   speedy and public trial by jury with the assistance of your

3   attorney Mr. Webber.  In fact, you have such a trial scheduled

4   in a couple of weeks.

5           Do you understand that?

6           THE DEFENDANT: Yes, Your Honor.

7           THE COURT:  Now, at that trial you will be presumed

8   to be innocent and the government would have to overcome that

9   presumption and prove you guilty by competent evidence beyond

10  a reasonable doubt.  You would not have to prove that you were

11  innocent. If the government were to fail to prove you guilty

12  beyond a reasonable doubt the jury would have the duty to find

13  you not guilty.

14          Do you understand that?

15          THE DEFENDANT: Yes, Your Honor.

16          THE COURT:  In the course of the trial the witnesses

17  for the government would have to come into court and testify

18  in your presence.  Mr. Webber would have the opportunity to

19  cross-examine the government's witnesses, to object to any

20  evidence the government offered, and to offer evidence on your

21  behalf.

22          Do you understand that?

23          THE DEFENDANT: Yes, Your Honor.

24          THE COURT:  At a trial while you would have the

25  right to testify, if you chose to do so, you couldn't be

1  required to testify.  Under the Constitution of the United
2  States you can't be compelled to incriminate yourself.  You
3  cannot be required to say anything that would in any way
4  indicate your guilt of a crime with which you are charged.  If
5  you chose not to testify I'd instruct the jury that they
6  couldn't hold that against you in any way.

7          Do you understand?

8          THE DEFENDANT: Yes, sir Your Honor.

9          THE COURT:  Now, if you plead guilty and your guilty
10  plea is accepted you are going be to giving up your
11  constitutional right not to a trial and all of the other
12  rights that I have just described. There would be no further
13  trial of any kind and no right to appeal from a judgment of
14  guilty. I would simply enter a judgment of guilty on the basis
15  of your guilty plea.

16          Do you understand that?

17          You have some question about that?  Do you have any
18  questions?

19          THE DEFENDANT: Yes, Your Honor.

20          THE COURT:  What didn't you understand or didn't you
21  understand anything I just said?

22          THE DEFENDANT: If you could repeat that?

23          THE COURT:  I will. If you decide to plead guilty
24  you are going to be giving up your right to trial under the
25  Constitution of the United States, and you're also going be to

1   giving up all of the other rights that I just reviewed for

2   you. There won't be any trial at all and you would not have a

3   right to appeal from a judgment of guilty. I would simply

4   enter a judgment of guilty on the basis of your guilty plea

5   here today.

6           (Counsel and defendant conferred)

7           MR. RAMOS:  Let me explain and I think maybe you

8   could understand.

9           MR. Webber: He understands.

10          MR. RAMOS:  The defendant is not pleading to a plea

11  agreement.  I think he wants to have the right to appeal

12  sentencing issues.

13          THE COURT:  Yes, you can.  You can appeal sentencing

14  issues, but you can't appeal the judgment of your guilt simply

15  -- the length of your sentence or how I compute your sentence

16  or whatever your sentence might be, but the guilt itself will

17  be decided by the plea. You can't say I'm not guilty.

18          THE DEFENDANT: Yes, Your Honor.

19          THE COURT: Also, if you plead guilty I'm going to

20  have to ask you questions about what it was that you did --

21          THE DEFENDANT: -- yes, Your Honor --

22          THE COURT:  -- in order to satisfy myself that you

23  are actually guilty of the crimes to which you seek to plead

24  guilty.

25          THE DEFENDANT: Yes, Your Honor.

1    THE COURT:  And you will have to answer my questions

2  and acknowledge your guilt and in so doing you are going to be

3  giving up one of rights I described, which is the right not to

4  say in anything that would in any way indicate your guilt.

5    Do you understand that?

6    THE DEFENDANT: Yes, I understand.

7    THE COURT:  Are you willing to give up your right to

8  a trial and all the other rights that I just described?

9    THE DEFENDANT: Yes, Your Honor.

10    THE COURT:  As I understand it, you have no

11  agreement at all with the government related to your guilty

12  plea in this case; is that correct.

13    THE DEFENDANT: No, Your Honor.

14    THE COURT:  That is correct?

15    THE DEFENDANT: No. That is correct.

16    MR. Webber : That is correct, Your Honor.

17    MR. RAMOS:  No agreement with the government.

18    THE COURT:  We've already gone through the charges

19  against you.  The penalties for each charge are the same?

20    MR. RAMOS:  Yes, Your Honor.

21    THE COURT:  Do you know how long the prison term

22  that can be imposed on each charge?  Under the statute of the

23  law on each charge you could be imprisoned for up to life.

24    THE DEFENDANT: Life imprisonment.

25    THE COURT:  Do you understand?

1         THE DEFENDANT: Yes, Your Honor.

2         THE COURT:  And again, on each charge the mandatory

3 minimum prison term is ten years.

4         Do you understand that?

5         THE DEFENDANT: Yes, Your Honor.

6         THE COURT:  And also, on each charge you will be

7 subject to a term of supervised release of at least five years

8 but up to life.

9         Do you understand that?

10        THE DEFENDANT: Yes, Your Honor.

11        THE COURT:  Do you know what supervised release is?

12        THE DEFENDANT: Yes.

13        THE COURT:  So you understand that is a period of

14 time that you serve after you are released from prison.  You

15 are not in prison, but there are many restrictions that are

16 placed on your liberty, so many I can't even begin to review

17 all of them for you now, but if you were to breach any of the

18 conditions of your supervised release while you were out on

19 supervised release you can be sent back to prison for up to

20 five years without any credit for any of the time you may have

21 spent out on supervised release.

22        Do you understand that?

23        THE DEFENDANT: Yes, Your Honor.

24        THE COURT: Do you understand that on each charge you

25 could be fined up to $4 million?

1          THE DEFENDANT: Yes, Your Honor.

2          THE COURT:  Okay. And on each charge I must impose a

3    special assessment of $100.

4          Do you understand that?

5          THE DEFENDANT: Yes.

6          THE COURT:  And do you understand that -- well, for

7    example, I must, therefore, impose a total special assessment

8    of $200.

9          Do you understand?

10         THE DEFENDANT: Yes.

11         THE COURT:  Okay.  Because there are two charges,

12   and at least, theoretically the sentence could be consecutive

13   instead of run one after the another, so that there could be

14   consecutive life sentences.

15         Do you understand?

16         THE DEFENDANT: Yes.

17         THE COURT:  And a potential total fine of $8 million

18   maximum.

19         THE DEFENDANT: Yes.

20         THE COURT:  Now, under the Sentencing Reform Act

21   United States Sentencing Commission has issued guidelines that

22   I must consult, along with a great number of other statutory

23   factors, in determining the sentence in a criminal case. Have

24   you and Mr. Webber talked about the sentencing commission's

25   guidelines and other factors that I must consider in

1  determining sentence?

2         THE DEFENDANT: Yes, Your Honor.

3         THE COURT:  Do you understand that I'm not going to

4  be able to determine the sentence until after the probation

5  department has prepared a presentence report and you and

6  Mr. Webber and Mr. Ramos have had an opportunity to review the

7  report and object to any of the findings made by the probation

8  officer; do you understand?

9         THE DEFENDANT: Yes, Your Honor.

10        THE COURT:  And do you understand if sentenced to a

11 prison term you are going to be required to spend the entire

12 period of that prison term in prison?

13        THE DEFENDANT: Yes.

14        THE COURT:  Mr. Ramos, can you estimate for me the

15 anticipated guideline range?

16        MR. RAMOS:  Based upon the information known to the

17 government, the estimated guideline range would be 360 months

18 to life.

19        THE COURT:  Do you understand?

20        THE DEFENDANT: Yes, Your Honor.

21        THE COURT:  What the government said, okay, you

22 understand, first of all, he is just estimating. He could be

23 wrong about the guidelines.  There are many other factors that

24 I have to consider in determining your sentence, so it could

25 turn out that Mr. Ramos is actually under estimating the

1  sentence here.

2           Do you understand that?

3           THE DEFENDANT: Yes, Your Honor.

4           THE COURT:  And if that were to happen you wouldn't

5  be permitted to withdraw your guilty plea simply because you

6  didn't have an accurate estimate of what your sentence would

7  be.

8           Do you understand that?

9           THE DEFENDANT: Yes, Your Honor.

10           THE COURT: Do you have any questions at all that you

11  want to ask me, Mr. Adams, about the charges against you, or

12  your rights, or anything whatsoever relating to this

13  proceeding?

14           (Counsel and defendant conferred)

15           THE DEFENDANT: No, Your Honor.

16           THE COURT:  Are you ready to enter a plea?

17           THE DEFENDANT: Yes.

18           THE COURT:  Mr. Webber, do you know of any reason

19  why your client should not plead guilty to Counts One and Two

20  of the superseding indictment?

21           MR. Webber : No, Your Honor.

22           THE COURT:  Mr. Adams, how you do plead to Count One

23  of the conspiracy to import drugs?

24           THE DEFENDANT: Guilty, Your Honor.

25           THE COURT:  And how do you plead to Count Two, the

1   conspiracy to possess with intent to distribute?

2           THE DEFENDANT: Guilty, Your Honor.

3           THE COURT:  Are you making the guilty pleas

4   voluntarily, of your own free will?

5           THE DEFENDANT: Yes, Your Honor.

6           THE COURT:  Has anyone threatened, forced or coerced

7   you to plead guilty?

8           THE DEFENDANT: No, Your Honor.

9           THE COURT:  Other than -- well, have you any

10  agreement or understanding with the anyone that has caused you

11  to plead guilty?

12          THE DEFENDANT: No, Your Honor.

13          THE COURT:  Has anyone made any promise to you that

14  has caused you to plead guilty?

15          THE DEFENDANT: No, Your Honor.

16          THE COURT:  Has anyone made any promise to you as to

17  what your sentence will be?

18          THE DEFENDANT: No, Your Honor.

19          THE COURT:  Turning first to Count Two.  Between

20  August 2002 and November of 2003, did you knowingly and

21  intentionally agree with other people to import narcotics into

22  the United States?

23          THE DEFENDANT: Yes.

24          THE COURT:  You tell me in your own words what you

25  did that makes you think you are guilty.

1    THE DEFENDANT: Well, Your Honor, I worked in the

2    airport, so I was called by one of my friends to tell me he

3    something is coming in on a particular date.  So being I'm in

4    the airport I have other friends in the airport all I normally

5    do is just get it from them.  Pick it from them.  Me and my

6    other friend -- well, my other friend Selwyn (ph) Smith and I,

7    Selwyn Smith has access to all over the airport, so he and I

8    normally goes into the airport.  I have access to certain

9    places.  He go into the airport.  We wait for the guy and say,

10   okay, he has that package.  He brings it to you.  So we might

11   pick it up from him at a certain area, and then we might call

12   somebody else.  Call my next friend Tyrone Brown.  Say yes we

13   have it and he might -- he will say, well, okay.  Somebody

14   coming to pick it up or just drop it over to that person. And

15   then --

16   THE COURT:  Okay.  Now, I gather there were a number

17   of people involved in this agreement relating to the drugs; is

18   that right, yourself, Tyrone Smith?

19   THE DEFENDANT: To my knowledge, four. Tyrone Brown,

20   Selwyn Smith, Dapper -- I mean what is his name -- Weatherly

21   (ph). I know him as Dapper, and myself.

22   THE COURT:  And it was your understanding that what

23   you were doing was participating in some kind of agreement

24   with --

25   THE DEFENDANT: Helping.  Not agreement.  Helping

1    him.

2            THE COURT:  Not a written agreement, obviously, but

3    it was an understanding.  Were you helping each other?

4            THE DEFENDANT: Yes.

5            THE COURT:  To bring drugs into the United States?

6            THE DEFENDANT: Yes, ma'am.

7            THE COURT:  Now, the drugs, where did the drugs come

8    from?

9            THE DEFENDANT: Well, Guyana.  Guiana.

10           THE COURT:  Guiana, that is where they originated.

11           THE DEFENDANT: Yes.

12           THE COURT:  And was one of the drugs that came in

13   under this agreement, was that cocaine?

14           THE DEFENDANT: Yes.

15           THE COURT:  Did marijuana also come in?

16           THE DEFENDANT: Yes.

17           THE COURT:  And was it your understanding that over

18   time five or more kilos of cocaine was imported?

19           THE DEFENDANT: Yes, Your Honor.

20           THE COURT:  And was it also your agreement that

21   overtime 50 or more kilos of marijuana was imported?

22           THE DEFENDANT: No, I don't know.

23           THE COURT:  You weren't involved with the marijuana?

24   You didn't know about it?  It was the cocaine?

25           THE DEFENDANT: At first it started off my -- one, we

1    had as marijuana under me and then it became cocaine?

2         THE COURT:  So you were involved in marijuana?

3         THE DEFENDANT: Yes, but the cocaine was really

4    pounds upon us. It came in under -- -

5         THE COURT:  It starts coming in more regularly?

6         THE DEFENDANT: It came in and it turned to be

7    cocaine, understand me?  Instead of weed it was cocaine.

8         THE COURT: Now, when it was marijuana was it your

9    understanding that not necessarily in any one shipment but

10   that over time at least 50 kilos or more of marijuana was

11   imported?

12        THE DEFENDANT: Yeah, but that would be like probably

13   like 25.  Probably like, yeah, yeah, yeah.

14        THE COURT:  I am saying over time.

15        THE DEFENDANT: Yes, Your Honor.

16        THE COURT:  Did this occur at some time between

17   August of 2002 and late November of 2003?

18        THE DEFENDANT: Yes.

19        THE COURT:  And again, was that at JFK airport?

20        THE DEFENDANT: Yes, Your Honor.

21        THE COURT:  And that's where the drugs were

22   imported, and the place from which the drugs were turned over

23   to other people?

24        THE DEFENDANT: Yes.

25        THE COURT:  Is that right?

1       THE DEFENDANT: Yes, to us, Terminal Four.

2       THE COURT:  But again, the drugs were imported there

3  and they were turned over for distribution there not by -- you

4  either turned them over or dropped them off or with somebody?

5       THE DEFENDANT: Yes.

6       THE COURT: You gave them to somebody?

7       THE DEFENDANT: Yes, Your Honor.

8       THE COURT:  Anything further?

9       MR. RAMOS:  I believe you went into JFK airport.  I

10  just wanted to make it's clear during the time period of the

11  conspiracy that he knew it was at least five kilos of cocaine

12  and not --

13       THE COURT:  Yes.

14       THE DEFENDANT: Yes, we did that.

15       MR. RAMOS:  That is acceptable to the government,

16  Your Honor.

17       THE COURT:  Okay.  Based on the information that

18  you've given to me I find that you are acting voluntarily,

19  that you fully understand your rights and the consequences of

20  your plea, and that there is a factual basis for your plea,

21  and I, therefore, accept your guilty plea to the two charges

22  in the superseding indictment.

23       THE DEFENDANT: Yes, Your Honor.

24       THE CLERK:  Sentencing is set for July 11th at

25  11:30.

1      MR. RAMOS:  The government would ask for remand at
2  this time.  Remand is mandatory under the 3143 (a)(2).  The
3  defendant has pled guilty to a crime with a ten-year mandatory
4  minimum, the drug crime.  The defendant was released on bail
5  over vigorous objections.  We believe he represents a
6  significant flight risk.

7      MR. WEBBER:   If he was going to flee it would have
8  been done prior to coming today.

9      THE COURT:  Let me say it is mandatory at this time.

10      MR. WEBBER: Judge, well, there are extraordinary
11  circumstances in this case. My client has attempted to
12  cooperate with the government to the fullest extent that he
13  can.  He opened his heart to them. They felt he has knowledge
14  above and beyond which he actually has, which caused him on
15  the eve of trial to come in to take this plea.  He understands
16  that he and I have to work very hard in the sentencing stage
17  to convince the Court that he had a minimal role in this
18  activity, that he wasn't the leader that they've been claiming
19  he was from day one, that he wasn't a manager, that he
20  actually was told by his friend Tyrone Brown to come in, pick
21  up this package, and drop it either 100 feet up the road or
22  bring it once or twice with Tyrone Brown to the location, that
23  he didn't even know where it was going.  So it was a
24  ministerial act.  I have been told that he is going to be
25  accused of violating a trust. He's a bag handler.

1    THE COURT:  At this point in time let me just tell
2  you I anticipate that I am going to have to through a lot of
3  material both from you and the government, and I am going to
4  have to have a much better understanding before I sentence
5  your client, there is no question about that, and that's
6  something that I want to be well prepared for, I want you to
7  be well prepared for, and I want you to be able to spend
8  whatever time you need to with your client, and you should be
9  well prepared for it, but at this point in time I really don't
10  have a choice.  I think you understand that. You have read the
11  statute.

12    THE DEFENDANT: Can I speak?  Your Honor, I went an,
13  spoke with them to my knowledge what I knew, and they still
14  said, no, I know more. I tell him I don't have -- I even told
15  him after that I went in ^  tomorrow could being ban, talk
16  with them, if they want.

17    THE COURT:  Mr. Adams, I understand what you are
18  saying.  The fact that they moved for remand has nothing to do
19  with this. These are the things that I am to going to have to
20  decide.  I have no reason to believe one side or the other is
21  saying something accurate right now pertaining to sentence.
22  All I'm saying is that the law requires me to remand you at
23  this point in time.  This in no way reflect on who I am going
24  to believe in connection with your sentence.

25    MR. WEBBER: Unless there are extraordinary

1   circumstances, my client intends to do whatever he could on

2   the street and to continue offering whatever cooperation he

3   can to the people so that --

4           THE COURT:  It's clear that he's already, you know,

5   obviously, he's already proffered and offered cooperation. In

6   terms of what he can do, that is not up to me.  I mean the

7   government has brought on the motion which it actually is

8   required to do under the statute, and I am required to grant

9   the motion under the statute.  I don't have a choice.

10          MR. WEBBER: Before coming here and talking with

11  counsel it wasn't mentioned that such a motion was going to be

12  brought. He didn't say that Your Honor would not remand him

13  but it was represented that you may not remand him.

14          MR. RAMOS:  I did not say that.  I said no such

15  thing.  I said it is possible the Judge will remand your

16  client and the statute is also --

17          MR. WEBBER: Possible equals may under the

18  circumstances.

19          THE COURT:  Well, I guess maybe I am reading it too

20  literally.

21          MR. RAMOS:  The statute says shall.

22          THE COURT:  The statute says what it says.

23          THE DEFENDANT:  Well, I have never been in any

24  trouble. My record speaks for itself.  I've never been -- I'm

25  a family man.  I am not going anywhere.  I mean I am not

1   running anywhere. I have been on out since September.

2           THE COURT:   I know you have made all your court

3   appearances.   I know about that.   Mr. Adams, there is no

4   question.   The reality is -- let me say this.   I don't know

5   what your sentence is going to be, but you are going to get

6   some sentence, and the time will start running from the day

7   that you are remanded, so what sentencing guidelines -- it is

8   not like you are spending extra time in there.

9           THE DEFENDANT: But I mean, my family.

10          MR. WEBBER: Judge, could he have some time to

11  prepare himself and his family.

12          THE DEFENDANT: My family is not aware of this.

13          THE COURT:   You have family?

14          MR. WEBBER:   His wife is here.

15          THE DEFENDANT: My mother, my father, my kids are not

16  even aware of this. The first time I ever been arrested.

17          MR. WEBBER:   May I have a moment, Your Honor.

18          THE DEFENDANT: I try to do the best.

19          (Pause).

20          THE DEFENDANT: First time I am offender,

21  $1.5 million bail.  The indictment said they understand that I

22  really -- I am not really the big man that they said I was,

23  but I might not something and I day came in and spoke to them.

24  Tell them what I know.  The big plan I was more big.  So

25  people come.  Call me big man because of my size.

1    MR. ABENSOHN:  As the Court, said the law is clear

2  here. The defendant is facing a minimum of substantial period

3  of time in prison. There's nothing that would qualify as

4  extraordinary circumstance as far as the government is aware

5  with respect to this discussion of proffer, and the

6  government's opinion, and as Your Honor observed, this was

7  really an issue for another day, but in the government's

8  opinion there was not a forthright proffer.  Not a real viable

9  effort at cooperation. We don't see any basis, certainly, to

10  avoid the mandatory language of this statute, and we will add,

11  Your Honor, that it has come to our attention that the

12  defendant visited the family of the likely witness in these

13  trial proceeding which gives us added reason for concern and

14  added reason to make the motion we have made, which, in any

15  event, is mandatory under the statute as the Court has already

16  recognized.

17    THE COURT:  Mr. Adams, I am sorry, but there really

18  isn't anything I can do.  All I can tell you is no one is

19  making any determination about your sentence.  At this point I

20  have no idea as to what your sentence will be, but clearly,

21  you will be sentenced to some period of time, and that will

22  run from today.

23    THE DEFENDANT: I understand, but my mother, my

24  family, nobody knows about this situation.

25    MR. WEBBER:  Give him two days, a week to give him

1  time?

2  THE DEFENDANT: I am not running away. I am not

3  going away. I have a bracelet. I have been keeping up to

4  whatever they need me to do. First time I've been arrested I

5  have no clue what is happening.

6  THE COURT: Mr. Adams, I'm really sorry. There is

7  nothing I can do. There really isn't. I don't have a choice

8  under that statute.

9  THE DEFENDANT: Well, you are the Judge.

10  THE COURT: I know I am the Judge, but I'm required

11  to follow the law as the Judge. I am sure your lawyer hoped

12  that this wouldn't happen but I know he knows about the

13  statute.

14  MR. WEBBER: Yes, Judge, but I didn't want to get

15  into an argument on the record that would involve my adversary

16  but I am personally disappointed -- very disappointed.

17  THE COURT: I sorry. It is really -- spend your time

18  working with Mr. Webber in connection with your sentence.

19  That's what is important.

20  (Defendant and counsel conferred)

21  THE DEFENDANT: I want to say good-bye to my wife.

22  THE COURT: Could he have a few minutes with his

23  wife?

24  THE MARSHAL: We would prefer they not, Your Honor.

25  Security reasons.

27

1          THE COURT:  She will be able to visit you.  You will

2    be very close by.

3          THE DEFENDANT: I can't even kiss my wife good-bye?

4          THE MARSHAL:  Sorry.

5          (Proceedings adjourned as above set forth)

6                    *   *   *   *   *   *   *

7

8

9

10

11

12

13

14

15          I HEREBY CERTIFY THAT THE FOREGOING

16          IS A TRUE AND ACCURATE TRANSCRIPT

16          FROM MY NOTES IN THIS PROCEEDING.

17          *Marsha Diamond*

18          OFFICIAL COURT REPORTER
            U.S. DISTRICT COURT

19

20

21

22

23

24

25